I'd like to approach the question of whether we have a proposal that I would like you to both approach. Because the cases are parallel in many respects, I thought it would be more efficient, unless there's an objection, to meet their counsel to have the cases received instead of having one case. I don't know if that would be relevant. I don't know if that would be relevant in the second case. Since we have the last record, so that you have an appellant in both cases, the first government appellant, you have full time to meet it. So, essentially, I'm going to provide you with full time investments, when you go from ten and five, this would be, when you go from ten dollars to one, all of that, and it's going to be, less than thirty. If there's no objection, we're still in the case. Okay, there's one other administrative, ministerial point. I think, we don't have, now, pages, and I think this is probably true of most of the briefs we have, I'm not checking the pages, twenty to twenty-one are provided. Could you provide those pages, to the, there's a certain, logical, gap, that, if you could just provide the pages, at some point, in the clerk's office, that's probably the key. I apologize, I'm out of the session, today, I realize that, I'm out of the day. Oh, that's fine. Okay, well, very well. Ms. Kirshner, is that, arranged in this effort? Yes, Your Honor, and we do have a complete copy, we have documents, and pages, in this case. Okay. This is a complete copy. Well, I think, I don't think I have to submit those pages, in any form, that's needed, to the clerk's office. Very well. We're, on your first hand view numbers, two thousand and seven, five thousand and eleven, and, five thousand and nine, and this is short circuit, short circuit, and I'm sure you know, I can't, but, do you understand the arrangement? Yes, Your Honor. May I please report, I'm Alan Bannett. In general time, you, put the federal, employee, overtime, on life support. If you do not acknowledge, appeals in these cases, you will effectively, pull the plug, on overtime, for federal employees, and the Federal Employees Pay Act. The appeals demonstrate, that employees can't rely, upon the good faith, of their managers, to issue written orders, to work overtime, and there's an ingrained expectation, that employees will, regularly work overtime, on the strength of oral orders, and they will not be able, to do their jobs well, unless they work the required, overtime. Overtime which may be required, by some document, an oral order, or institutional custody, that goes back decades. In the interesting case, the appellate claims case, the appellate claims arose, under the pre-dead of case law. I don't actually disagree, with anything you just said, from a policy standpoint. I would think, an important job, like a prison official, if the warden says, I need you to be here, there would be a surprise, and it's imminently important, that they do, and that would alter, their loyalty, and it would ultimately, deprive them of, rightful payment, as they were to deny, the warden, I mentioned, could even be for job jeopardy, instead of doing that, or possible lack of advancement. I think all policy reasons, you've asserted, are perfectly reasonable, the problem is, OPM issued a regulation, and we have a court, interpreting that regulation, as not quite reasonable, in light of the statute, which is our burden, under a sheriff's army, I could give it, definitely to the agency, but it seems, like if you want to make, these policy arguments, you actually have to make them, to the agency, in an attempt to get, the writing changed, so that that's really not something, we can do on it. I understand, the threat of arrogance today, is going to show you, how these documents, that we've talked about, these briefs, should be regarded, as written order, assuming you apply those, and you give deference, to the written order, the written regulation. We cannot do that, the Supreme Court already did it, the story of the crisis, was out of line, I might not have gone that way, in the first instance, I might have, so. I understand, that's right, you're going to undo the decision, and we're all bound by that, but the point I want to make, right here, especially today, is this, the court below, was unreasonable, and unrealistic, in viewing the documents, which we regard, as causing, the employees, to work overtime, the employees were caused, to work overtime, for many reasons, and you just talked about, one very important document, the program statement, the standards, which informs, all Bureau employees, that oral orders, are as good, as important, as written orders, that is, the bible, for all of the, employees, of your prisons, if you, if this document, says, that an oral order, is the same weight, as a written order, and you can, be found, subordinate, and disciplined, for disobeying, that oral order, and this document, this program statement, this standard, is a document, which should guide, your decision, in all of these cases, the documents should guide, the judge, and the court below, it is a document, that requires, all of the employees, to follow oral orders, when the oral order says, you will work overtime, and you fail to do it, you will be found, as subordinate, you will be disciplined, and it makes no difference, whether it's an oral order, or a written order, that's just a paragraph document, which I hope you'll consider, right here. Can you talk to me, in regards to that, where that document, was referring to, and how long, did that initiate, the formal order, and in that case, the court order? In the Carlson case, you referred to it, on pages three and four, and across the appendix, you'll find, in regard of, pages 70 and 71, of the appendix, and 74. The standard manual declares, that employees are to obey, this order, to their superiors, at all times. Can you tell me, where it says, what you said, where it says, that oral orders, are required, on page three of the appendix, to be written orders? Because, of the table of penalties. The table of penalties? Which is what page? 74. Yes, thank you. It doesn't distinguish, between oral, or written orders, is it failure, or delay, in carrying out orders, work assignments. There. Insubordination. It doesn't distinguish, between written, or oral orders. Any, any order. Oh, but, I don't care, what you just said. Talking to you, showed me, because, I thought, you should have, indicated, yourself. I thought, you should have said, this document, correctly, says, oral orders, are to be treated, identically, to written orders. And that's, not. No. It doesn't, distinguish. You're inferring. Yes, yes. None of the documents, says that. You're inferring, from, what you just said, you don't carry out, orders, to be written. Correct, correct. It says, orders. It doesn't say, written orders. It says, orders. Any order. Any order. This is a very, important document, that governs, all the employees, in these cases. If an employee, was ordered, to do something, that he's not required, to do, to the government, who is taking, these actions against him, what I mean by this, is suppose he was, ordered to work, for five hours, in the middle of the night, when he was truly, a daytime employee, and he declined to do so, for whatever reason, do you really think, they could then take action, against him, under this provision, when it's not in, his job description, clearly, he has clearly articulated, that order. What one factual, mistake you made there, the job description, all the job descriptions, in these cases, refer to, all the members. I'm not, talking about, the job description. I don't think that, what you pointed to, if what someone, would have to do, is outside the scope, of their job, I don't see, how the government, could, personally, penalty, for that. I think you can, very safely, assume, that the Bureau of Prisons, a quasi-military,  will, take action, against an employee, who fails to follow, any order, oral or written, and, if you're given an order, you've got two people, two choices. You either have to obey it, or you, if you don't obey it, you can grieve it later on, but you have to obey it. That's the standard rule. You have to obey it. If it's a, a business, a legal order, you have to follow it. It wouldn't be a legal order, it would be an order, to work overtime. And I absolutely agree, with the job description. The job description, requires an employee, to follow the order. The job descriptions, always say that. You must follow the orders, of your superiors. So, if you didn't follow, the order, you would see that case here, on appeal, in the MSTP. The MSTP, would occur, a removal action, against an employee, for failure to follow, an oral order, to work overtime. It's an order, to work overtime. I mean, suppose the employee, was unable to. Suppose it was a single parent, kids at home, that had, you know, no one to watch them. I mean, there are lots of circumstances, that can happen. So, suppose that, there was an order, to work overtime, and the employee, was incapable, of performing. Is that the kind of order, for which they could really, be reprimanded, and completely, refused? I mean, unable, to work more, than what they ever, agreed to do. That's it. It's like a draft sheet. You're adding some factors, that would distinguish it, and ensure, that you'll find, wardens, and associate wardens, and captains, that say, okay, if you can't come in, we'll find somebody else, to do it. Yeah. But, if you don't have a good excuse, you're going to have to do it. And if you're required, to come in, and get your keys, and controls in, if you're required, to do tasks, along the way, if the Bureau requires you, to talk to inmates, along the way, all of these things, are required. And some of them, they may not be, a direct order, saying, you must do this. I was just about to ask, why do they have, the 30 minute period, in the morning, and not, the 30 minute period, in the afternoon? Do you have any idea? I didn't know if the team, asked below, or if they're, interested in it. Well, I can tell you, I can tell you, why there are overlaps. The overlaps, develop, and in the first, Bureau prison case, we brought up in 83, and went to 83, 96, and 47. As a result of that case, we had the very same claims, for preliminary, and post-preliminary, overtime. They issued, operative memorandum, 214-95. And in that case, in that order, which, told them, they have to, start planning the time, of course, and the time, they send them, into the, into the control center, when they, start to, pick up keys, or equipment, at that point. It will be regarded, as on time, at that point. As a result of that, the order also required them, to start overlapping shifts, to minimize, or eliminate, overtime. So, you'll just see, Why don't you, really, mention them, for their failure, to do that, in the after shift? You're saying, that they were ordered, to have some sort of, overlap? But, it might seem, in the back of these cases, with Mr. Cheney, and others, is that, there's an overlap period, in the morning shift, when the people come, or when you're off, the next shift, and come on in the morning, and it's 30 minutes, before the after shift. There's no similar overlap, at the end of the day, when the day shift, goes on, and the night shift, comes on. Am I misunderstanding, those facts? You're correct. I don't think that, either the individuals, have standing, to do that. That is the union, representing, not, my findings, are non-union. The union, may have an argument, to raise, when you want to, overlap these, to minimize the overtime, but, my clients, who are managers, and supervisors, don't have any standing, for a couple of years. You need to follow, up, the amount of people, who may apply differently. But, the fact, that you've got these, these shifts, which are fighting, against each other, and there is no overlap, there, on two of the shifts, and the result is, if you want to do your job well, you're going to have to, you're going to have to, get in there early, and you stay late. If you don't do those things, that's especially for tenants, the post lawyers. It's a very good point. These post lawyers, they may require work, before the shift begins. If you follow them, you read those things, it has a lot of effect. Is there anything, that progress,      requested, a little more overtime, to be able to, get back to work, in time. Is there anything, that progress, any employee, from requesting overtime, to be able to,  in time. There is no, rule your honor, but there is, inertia, there is, discouragement, it's very, very clear, in the Bureau, that you follow, the flow here, and the Bureau, is a state, that's all united. People who show up, just at the minute, they're supposed to show up, who leave at the minute, they're supposed to leave, and the, the cuts, or the division, is, you don't question, these things. Overtime is definitely, you're going to get, if you're expected, to work overtime, about overtime, today, and, you can ask for it, and that's what people, do it, because there is, there is a, a body, of an agency, telling you, don't even think about it. So, yes, there are cases, where people have asked, overtime, and sometimes they can, take advantage of it, sometimes. But, the threat is, that the entire agency, is telling people, don't think about it. And, it's warden's symptomy, we quoted from it here. Warden's, warden's symptom of what? Don't even think about it. It's, it's consensual. Your manager, he has worked with you over time, he's going to ask for it. He's putting it out. And so you have, a lot of barriers, but there's other public servants, that are here, protecting us, and, and decisions, to, to guard, prisoners, inmates, people who are suspected of crimes, people who have been convicted of crimes, and, and that they are, they're getting these people, who are going to follow, the traditions. Do you have a question? Yeah, you do. You've got a lot, I mentioned the standards of conduct, which is paramount here. You have other documents, the training documents, the, the reinforced expectations, the employees that you work over time, there's corrections. So, the court ultimately found, even with regard to, the post-preliminary trial, that it was metaphorically, it was diminished. Okay. Okay. Well, we disagree, of course, on a lot of reasons. One of the reasons, was that the judge was slicing and dicing the time. He wasn't considering how consecutive it was, isolating different partners. If you consider, all of the time, that, that, the employees, it was at a certain extent, which is post-preliminary, it amounts to, more than 10 minutes, a day. If you, even count the time, for example, He testified himself, at some point, that it took, 10 to 15 minutes, before he, Yes. Yes, he did. And that included, what time, when he's already, technically lost the job? No, he's not the judge. No, he's not. He's within the institution, and he hasn't gotten to the control center yet. We're talking about, the time it takes, from closing up shop, and opening up his office. That, that requires him, to finish up, the lieutenant's office. The target has been, worked on, during the day, but he can't leave, until he finishes, the lieutenant's office. And then, his, his replacement comes in. He has to, give the keys, and radios, to the replacement. And he has to tell the replacement, what's going on. Information is very, very important, in the institution. If you don't know, what's going on, you don't, Yes. Yes, it is. And that's all, encapsulated, in some standards, Yes, it is. And then the, walk time, is subtracted out, You can't do that. Why is that? Because it's part, and parcel of the same, work. It's, it's all consecutive. It's, it's, this is not, portal to portal time. He's within the institution, he's on duty, he's doing his, It was, it was in the institution, right? Because, my assistant, we suggest, you know, when we suggest, you've got to walk, to the parking lot, traffic might take you, while you get here, you turn right, out of the building, and you don't get counted, for all that time, obviously. So, explain to me, why that walk, time, wants to be included, because normally, walk time, you need to get, to the parking lot. So, that's not what you're saying. No, I'm saying, this is Baylor. Since Baylor, and for generations, has been held, that the time you spend, which is, integral to, the work, and walking is part of, the job, right here, because, he is, he's still on the job, he's still required, to do things. He's still required, to talk to inmates, he can't leave, until he, passes by the control center, and he leaves, he's there, for radios, or batteries, he, there are, what are called, 24 hour keys, but those 24 hour keys, may or may be, you just simply, can retrieve these, out of the control center. So, you can't walk out, of the institution, with those things, because, it's very secure. So, you are on duty, you're doing things, and then, there are camps, there are inmate camps, the post office, or the inmate camps, there are camps, and those camps, may start, around 4 o'clock, or so, but, if you don't have, a clear camp, you can't leave, and you may have, a clear camp, until like 4.15, or 4.20, a clear camp means, verbally, all of the posts, have reported, to the control center, that all of the inmates, are in their places, and the right number, of people are there. God forbid, and then, I'm paraphrasing, one of the witnesses, God forbid, you should leave, the institution, and they found, that somebody wasn't there. You'd be toast. So, shit, we can't shave, they just finish, doing his work, until after, he goes, to the control center, and says, wait for those guys, I'm going, or he turns in, his keys, or his equipment, and then he goes, to that point,  So, now, what we're talking about now, of course, it's part of the Shea case, which was trialed, Yes. by the Court, because it was in the senate, which I guess, I wouldn't ... Now, in order to understand, exactly, what a true dispute, about the findings made, after the trial, at the trial court, if they would like to ... indict him, can you tell me, exactly, which elements of, the trial court's, analysis at the time, claimed, by Mr. Shea, to be true, but disregarded, by the Court, should not have been, disregarded. Okay, well, I was trying to do that, because ... Yeah, but we're sort of, talking about, how, here, we've got, walking here, I just want to, be very sure, what, I mean, I think I know, what the trial court did, I want to be very sure, I understand, everything you think, that the trial court, got wrong. Okay. But, the trial court, should have, counted, was, all the time, 10, 10, 10, starting from the time, that, now, he's still finishing up, his laws. Sometimes, there are, uh, reports, that need to fill out, in the reports, that may keep him, sometimes. But, even if he didn't fill out, in the reports, he's finished the law. Then, his replacement comes up. He has to, give, keys, and a radio, to the replacement. He needs to brief, the replacement, on what's going on. So, information is vital. You don't know, what's going on, before you have to do, a very good job. But, that's an element, that the trial court, didn't, didn't, write credit, for as much time. Right. But, nonetheless, said that, that's, that's time, which is, credit, for Mr. Shea. So, you're not going to need, to speed up, the question. You're going to speed it up. But, but, I'm looking for, what are the elements, that the trial judge, disregarded, or gathered, that you think, should have been included. Okay. To the extent, that he, he didn't have, the, the walking time, that I'm talking about, right here. The time it takes, to leave. 3 minutes and 21 seconds, he took out. That's what he took out. He said, 3 minutes and 21 seconds, to extract number 16, to extract number 10. Okay. And, There, there's time, that you get to spend, in leaving, the, the defense office, after you finish, reaching your replacement. And then you may be talking, to inmates or, or other employees, along the way. You go through salad court, you can go to the, control center there, and you can't leave, until there's been a good, verbal pitch. We have a Supreme Court paper, I think 18, 18, it says, that what time, to offer, when you're removing, safety gears. Safety gears, you were required to wear, during your job. Safety gears, you can't take out, to the car with you. That walking, into the locker room, to take all that safety gear, off the store, is not considered, work time. It's not part of the, clinical activities, for which the employee, operates. So, I guess, I'm thinking by now, that you could just explain, to me, why this case, might be different than that. I, I, I interpreted, the IPC differently, to, to say that, that there's part and parcel, of the main job, that someone is hired for, if you count that, as work before. In this case, right here, we had, a shift, a change, in the practice. Up to a certain point, during the, dependency, of these claims, right here,  in fact, getting all of their, keys, and their, and their, batteries, and their radios, at control center. During the, the main job, during the dependency, of these, these cases, they started changing, the policy, like, FCI, which is where, where, the Senate chamber, at that point, they started changing, so that the, incoming lieutenant, would, change, keys, and radio,  with the, the actual, lieutenant. That, that would start to, to take away, the time, from the control center. The control center, has what they call, the key line. The key line, that we, go through, and go through the line there. See, whether it's during rush hour, in the, whether, in the morning, or the afternoon, if it is rush hour, it will take you a while, to go through the key line. There may be two people ahead of you, or 15 people ahead of you. That saves time. That, that, that's the kind of time, which should be counted. The, operative domain, 24225, expresses tax. That time, it seems to count that time, it should count that time, because, that is time, you're spending, on the job, and that number of them, make, make it clear to the employees, that, now, we're going to count your time, 95 months, and you will now count your time, from the time you were in, the key line. From that point on, the employees, should be, the time should be counted,   around 2004, or 2005, the employees, did have to get, their radio, and their, and their, and their, and their, and their, and their keys, at the control center. They couldn't go, to their duty post, with that sort of stuff. You needed to have the keys, to open up, secure doors, you needed to have a radio, for security purposes, and safety purposes, you didn't have a radio. The trial judge found, that the, key exchange, radio, was, was over five minutes. He disputed that, and that was, that was added, in the Shea trial, in the Madden trial. It could be minimized, for the time, but that was after, having heard, witnesses from both sides, accrediting, the testimony. So, there's five minutes, there's a, I think in the Shea case, it's what, one and a half minute walk, that they're working on. I believe that's right. Okay. So, the extra time, beyond that, six and a half minutes, that you said, that the court, had started, is exactly, what? I just want to make sure, that I know, where, where, and how much, extra time, you're counting. Okay. I, I can't give you exactly, when it was started, but we, we submitted, to the, the court below, a, an outline, which identified, that the separate, amount of time, and perhaps, provided the time, for you, in the, in the appendix, but we, we had a, a chart, that we told, the executive minister, and he told us, that, the, okay, well, that's, careful, but can I move you over, to something a little different, which is, one of the arguments, that you made in the Shea, is that you need to, make sure to talk, to the commission, and I don't know, if it's right, to talk about it. Okay. So, one of the, arguments you made, in the Shea, related to, the receiving, of cost time, in lieu of, overtime payment, for the following week? Yes. Okay. And, it wasn't, kind of, in the brief, and I realized, that wasn't going to be, before we issued the case, but we issued, yet another Doe case. We have the case, of the Doe Doe. You know, you have, the same Doe, and then, you have another case, that came out, just in January, where, in fact, I said, Bryce and I, had also, it didn't escape, my observation, but unless, in that case, you complained, that it cost time, to accept, the one, that you need for life, to make that choice, to accept a one to one, and you give up, and that's, your choice to make, but you make it, and then you give it up. So, I assume, at some point, hopefully, you've come across, a case, in preparation, for oral argument, and I'm hoping, that you'll come to a place, that you recognize, we're done now, that's already decided, with regard to our own position, on the exact issue. The issue is, that, you should not make that, retrospective, retroactive, at the time, that the only time, that occurred here, there were some instances, where, the employees, were given the option, but in some cases, there was no option. It was, they just said, we'll give you compound, and that's it. I'm sorry, I don't believe that our case, actually, says that giving an option, is required, but, I think, you can do that, and try to run away. What I'm saying, is that, the fact, that the BOP cases here, that the Carlson and Shea cases, and the cases we've had, is that, there were times, where, management said, we'll give you the option, but, most of the time, there was no option. Management said, to be acceptable. So, we fill out this form, and we give you the form, and you fill out the form, and you get the compensation. And so, you get hour, per hour, and you don't get anything, for the time, for the hours, you were focused on. That was what happened. So, is there evidence, in the record, that they were, because, correct, my recollection was, that they were given, an option, that they were, they were given the option, of selecting, on time, or over time, and it said, for example, Mr. Shea's case, there were, seven defendants, that he, that he attended, outside of the door. And, my understanding was, that all seven defendants, that he was given, an option. Now, if I'm misremembering, or misunderstanding, I'd love you to point me, in the record, because, maybe it's a suspicion, that has to be brought, with our president, possibly, or maybe, okay, go out, and such, but, I didn't find any evidence, in his objection, that he wasn't given, an option. In fact, I thought,   to go out, and go to the back of the house. So, to, to encourage, maybe, or though, that he had a problem, with their home. But, apart from that, the one question, that I do, is, that, the works of Mr. Shea, and the seven, who attended his meetings, my understanding, that he had closed doors, that required him, to attend, their houses, and to attend those, were invited. This is what you're seeing right here, below, of how, the bills were written, were reviewed, and handled. Yeah, and, that they were, cumulatively, and, I want to emphasize, that whenever you look up, in these documents, please, view them cumulatively, because in the real world, the managers, and employees, view them all, cumulatively. It's a law of the shop. And, cumulatively, you've got a lot of documents, which require them to attend, these meetings. You have institutional supplement, in these institutions. And, they say, the transparency meeting, is being held, at a certain time. The department, needs to be held, at a certain time. And, there are combined, transparency meetings, that the department needs, at a certain time, each month. Those are stays, and the decisions, and the supplement, that goes after, all the employees. Let me interrupt you, because, I definitely understand, all of your arguments, about the rest of the documents, but, what I wanted to get at, was, do you have a written order, that says, they must attend? By the way, that doesn't matter. Then, you have that, and then, he did attend. Now, you didn't attend all of them, of course, because, you know, there's a couple of, restraining things, which are complicated things, but, those are the same seven, for which he did receive, comp time. Right, that's the crucial factor, is he did, the court may not have, effectively, treated these, as entitled to overtime, but he did, in fact, get comp time, for those seven. Yes. Right, yes, sir. Your, your, what did you want to say? Just that, I was just about to say, that, for the reason we stayed in Greece, and, today, we asked the court to, reverse the, the court below, and, proceed with further, proceedings below. Thank you. Great. May it please the court, the child court, has correctly applied, this court's decision, to the, in the overtime, and regulations, of waking up, 5 CFR, 550.116.         in the, proceeding with the, reaching a, reach a, and changing, direction, does the court, give, any, any, directives, formal, directives, never, put in writing, on employees, to work, in that, off the clock, in practice, is, employees, are, private, to that extent, what's the remedy, for an employee, in those circumstances, when the employee, is told, yes, you have made our shift, but, you are expected, to be here, for the next,              15, 16, 17, 18, 19, 20, 21, 22, 23, 24, 25, 26, 27, 28, 29, 30,    34, 35, 36, 37, 38, 39, 40,    44, 45, 46, 47, 48, 49, 50, 51, 52, 53, 54, 55, 56, 57, 58, 59,              73, 74, 75, 76, 77, 78, 79, 80, 81, 82, 83, 84, 85, 86, 87, 88,         97,    101, 102, 103, 104, 105, 106, 107, 108, 108, 108, 109, 108, 109, 108, 109, 115, 115,           155,      155, 155 155, 155, 155, 155, 155, 155, 155, 155, 155, 155, 155 155 151 152 153 154 155 156 157 158 159 1510 1511 151 152   155       1512    1516 1517 1518 1519 1520 1521 1522 1523 1524 1525 1526 1527 1528 1529 1530  1542     1547     1551 1552  1554 1555 1566 157 157 158 159 1510 1511 1512 1513 1514 1515 1516 1517       1524  1526 1527   1530 1531 1532 1533 1534 1535 1536 1537 1538 1539 1540 1541 1542 1543 1544 1545 1546 1547   1550 1551     1566   159 1510 1511 1512 1513 1514 1515 1516 1517 1518 1519 1520 1521 1522 1523 1524 1525              1539 1540 1541 1542 1543 1544 1545 1546 1547 1548 1549 1550 1551 1552 1553 1554 1555 1556           1576 1577 1578 1598 1510 1511 1512 1513 1514 1515 1516 1517 1518 1519 1520 1521 1523              1537 1538 1539 1540 1541 1542 1543 1544 1545 1546 1547 1548 1549 1550 1551 1562          1511   1514 1515 1516 1517 1518 1519 1520 1521 1522 1523 1524 1525 1526 1527 1528 1529 1530 1531 1532 1533 1534 1535 1536 1537 1538 1539 1540 1541 1542  1544 1545 1546 1547 1548 1549 1550 1551 1552 1553 1554 1555 1566 1577 1588 1599          1519 1520   1523 1524 1525 1526 1527 1528 1529 1530 1531 1532 1533 1534 1535 1536 1537 1538 1539 1540     1545    1549  1551 1552 1553 1554 1555 1566 1577 1578 1598 1599 1510 1511 1512 1513 1514 1515   1518 1519 1520         1529 1530 1531 1532 1533 1534 1535 1536 1537 1538 1539 1540 1541 1542 1543 1544 1545   1548        1566 1577  1579 1580 1581 1582 1583 1584 1585 1596 1597 1508 1509 1510 1511 1512 1513 1514    1518 1519 1520 1521 1522   1525 1526 1527 1528 1529 1530 1531 1532 1533 1534 1535 1536 1537 1538 1539 1540 1541 1542 1543 1544   1547 1548         1555 1556 1557 1558 1569 1570 1571 1572 1573 1574 1575 1576 1577 1578 1598 1599 1510 1511 1512           1523 1524 1525 1526 1527 1528 1529 1530 1531 1532 1533 1534 1535 1536 1537  1539 1540  1542        1550 1551 1552 1553 1554 1555 1566 1577 1578 1578 1579 1580 1581 1582 1583 1584 1585 1596 1598 1510    1514    1518 1519   1522 1523 1524 1525 1526 1527 1528 1529 1530 1531 1532 1533 1534 1535 1536   1539            1551 1552 1553 1554 1554 1555 1556 1557 1558 1559 1560 1570 1571 1572 1573 1574         1512 1513 1514   1517 1518 1519 1520 1521 1522 1523 1524 1525 1526 1527 1528 1529 1530 1531  1533         1542    1546 1547 1548 1549 1550 1551 1552 1553 1554 1555 1566 1577 1578 1578 1598 1599 1510 1511            1523 1524 1525 1526 1527 1528 1529 1530 1531 1532 1533 1534 1535 1536 1537 1538 1539   1542        1550 1551 1552 1553 1554 1555 1566 1577 1578 1578 1579 1580 1581 1582 1583 1584 1585 1596         1517  1519   1522 1523 1524 1525 1526 1527 1528 1529 1530 1531 1532 1533 1534 1535 1536 1537 1538 1539 1540     1545      1551 1552 1553 1554 1555 1566 1577 1578 1578 1579 1580 1581 1582 1583 1594 1595       1512 1513    1517 1518 1519 1520 1521 1522 1523 1524 1525 1526 1527 1528 1529 1530 1531 1532 1533 1534   1537 1538 1539     1544    1548 1549 1550 1551 1552 1553 1554 1555 1566 1577 1578 1579 1580 1581 1592      1508     1513    1517 1518 1519 1520 1521 1522 1523 1524 1525 1526 1527 1528 1529 1530 1531  1533 1534     1539   1542 1543 1544 1545 1546 1547 1548 1549 1550 1551 1552 1553 1554 1555 1566 1577 1578 1578 1579 1580            1514  1516 1517 1518 1519 1520 1521 1522 1523 1524 1525 1526 1527 1528 1529 1531     1536   1539   1542 1543 1544  1546 1547 1548 1549 1550 1551 1552 1553 1554 1556 1557 1558 1569 1570 1571 1572              1596 1597 1508 1509 1510 1511 1512 1513 1514 1515 1516 1517 1518 1519 1520  1522  1524  1526 1527        1535 1536 1537 1538 1539 1540 1541 1542 1543 1544 1545 1546 1547 1548 1549 1550              1514 1515 1516 1517 1518 1519 1520 1521 1522 1523 1524 1525 1526 1527 1528 1529  1531 1532 1533 1534 1535 1536 1537 1538  1540   1543 1544 1545 1546 1547 1548 1549 1550 1551 1552 1553 1554 1555 1556 1557 1569 1570         1579   1582 1583 1584 1585 1596 1597 1508 1509 1510 1511 1512 1513 1514 1515 1516 1517 1518 1519 1520 1521   1524     1529  1531 1532 1533 1534 1535 1536 1537 1538 1539 1540 1541 1542 1543 1544 1545 1546 1547  1549 1550  1552      1578  1580 1581 1582 1583 1594 1595 1596 1507 1508 1509 1510 1511 1512 1513 1514 1515   1518 1519     1524 1525 1526  1528  1530 1531 1532 1533 1534 1535 1536 1537 1538 1539 1540 1541 1542 1543 1543 1544          1553   1556 1557 1558 1559 1560 1570 1571 1572 1573 1574 1575 1576 1577 1578 1579 1580 1581          1511 1512   1515 1516 1517 1518 1519 1520 1521 1522 1523 1524 1525 1526 1527 1528 1529 1530  1532            1544 1545 1546 1547 1548 1549 1550 1551 1552 1553 1554 1555 1556 1557 1558  1570 1571 1582 1583 1594 1595 1596 1507 1508 1509 1510 1511 1512 1513 1514 1515 1516 1517 1518 1519 1520 1521 1522 1523 1524 1525 1526 1527  1529           1540 1541 1542 1543 1544 1545 1546 1547 1548 1549 1550 1551 1552 1553 1554 1555 1566 1577   1510           1521 1522 1523 1524 1525 1526 1527 1528 1529 1530 1531 1532 1533 1534 1535 1536     1541 1542 1543 1544   1547 1548 1549 1550 1551 1552 1553 1554 1550 1551 1552 1553 1554 1554 1553 1554 1555 1566           1517  1519 1520 1521 1522 1523 1524 1525 1526 1527 1528 1529 1530 1531 1532 1533 1534 1535 1536       1543 1544 1545 1546 1547 1548 1549 1550 1551 1552 1553 1554 1555 1566 1577 1578 1579 1580 1581 1582 1593 1594     1509 1510 1511     1516 1517 1518 1519 1520 1521 1522 1523 1524 1525 1526 1527 1528 1529 1530 1531 1532 1533 1534  1536 1537  1539    1543 1544   1547 1548 1549 1550 1551 1552 1553 1554 1555 1566 1577 1578 1579 1580 1591 1592  1594   1507 1508        1516 1517 1518 1519 1520 1521 1522 1523 1524 1525 1526 1527 1528 1529 1530 1531 1532 1533        1541 1542   1545 1546 1547 1548 1549 1550 1551 1552 1553 1554 1555 1556 1557 1558 1569 1570    1574  1576 1578  1580 1581 1582   1585 1596 1597 1510 1512 1513 1514 1515 1516 1517 1518 1519 1520 1521 1522 1523 1524 1525 1526          1536 1537 1538 1539 1540 1541 1542 1543 1544 1545 1546 1547 1548 1549 1550 1552 1573       1510 1511 1512 1513 1514 1515  1517 1518 1519 1520 1521 1522 1523 1524 1525 1526 1527 1528 1529 1530 1531 1532 1533 1534            1546 1547 1548 1549 1550 1551 1552 1553 1554 1554 1555 1556 1557 1558 1569 1570          1599  1511  1513 1514 1515 1516 1517 1518 1519 1520 1521 1522 1523 1524 1525 1526 1527 1528 1529 1530  1532     1537 1538 1539 1540 1541 1542 1543 1544 1545 1546 1547 1548 1549 1550 1551 1552 1553 1554 1556 1579 1580              1514 1515 1516 1517 1518 1519 1520 1521 1522 1523 1524 1525 1526 1527 1528 1529 1530 1531           1542 1543 1544 1545 1546 1547 1548 1549 1550 1551 1552 1553 1554 1555 1556 1557 1569 1570 1571          1511  1513 1514 1515 1516 1517 1518 1519 1520 1521 1522 1523 1524 1525 1526 1527 1528 1529 1530 1531      1537   1540 1541 1542 1543 1544 1545 1546 1547 1548 1549 1550 1551 1552 1553 1554 1555 1566 1577 1588 1599 1510    1514    1518   1521 1522 1523 1524 1525 1526 1527 1528 1529 1531 1532 1533 1534 1535 1536 1537  1539 1540    1544 1545 1546  1548 1549 1550 1551 1552 1553 1554 1555 1566 1577 1578 1579 1580 1581 1582 1583 1584 1585    1510 1510      1516  1518 1519 1520 1521 1522 1523 1524 1525 1526 1527 1528 1529 1530 1531 1532 1533 1534 1535         1544 1545 1546 1547 1548 1549 1550 1551 1552 1553 1554 1555 1566 1577 1578 1579 1580 1581 1582 1591    1505 1506 1507         1517 1518 1519 1520 1521 1522 1523 1524 1525 1526 1527 1528 1529 1530  1532    1536  1538 1539  1541     1546 1547 1548 1549 1550 1551 1552 1553 1554 1554 1555 1556 1557 1558               1512 1513 1514 1515 1516 1517 1518 1519 1520 1521 1522 1523 1524 1525 1526